THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE UNITED STATES OF AMERICA,

    Plaintiff,

v.

BRANDON CASERTA,

    Defendant.

Case No: 1:20-CR-183

Honorable Robert Jonker

### BRIEF IN SUPPORT OF DEFENDANT BRANDON CASERTA'S MOTION TO COMPEL DISCOVERY

### BASIC FACTS

The Government began investigating this case in mid-March 2020. From the beginning this investigation involved a confidential human source identified in discovery as "CHS-2." CHS-2 is the central governmental figure in this alleged conspiracy and remained highly involved in all aspects of the investigation through October 7, 2020 when arrests were made and charges brought forth. CHS-2 communicated in person and electronically with Defendant as well as CHS-2's FBI handlers S.A. Impola and S.A. Chambers. Additionally, CHS-2's cell phone was used to communicate with all indicted members of the alleged conspiracy, with other UCE's (undercover confidential employee), with other CHS's, with other un-indicted alleged co-conspirators, with witnesses to this case and, again, with his F.B.I. handlers Impola and Chambers. This communication lasted from the beginning of the investigation through the end, approximately 7 months. The form of communication involved multiple platforms on the phone to include voice calls, voicemails, text messages, encrypted messages including multiple sub-group

encrypted chats and possibly other methods yet unknown to the defense.  CHS-2 has been paid significant amounts of money, including funds for CHS-2's phone and other electronic equipment.  During a state preliminary examination CHS-2's FBI handler S.A. Impola testified regarding payments to CHS-2, known as "Dan", as follows:

> Q. Okay.  Is there any other, did he [Dan] receive any other assets like a car?
>
> A. I mean all the other assets are included in the reimbursement, so there's a you know **there's a computer, a phone, communication devices and accessories** that go with that, that were included in the six thousand dollar reimbursement that – - that was accounted for.
>
> Q. Okay.  So that's a total, yesterday I had thirty thousand, but it's more like fifty four thousand, in total compensation?
>
> A. That's correct; **fifty four thousand is what I had as my total payment**.

(People v. Pete Musico File No. 2003173FY, Joseph Morrison File No. 2003172FY, Paul Bellar File No. 2003171FY; Preliminary exam testimony Vol. 2; March 4, 2021; Page 18/Line 17) [Emphasis mine](**Exhibit 1**, pages 17-20 for context if desired)

Defendant's phone as well as CHS-2's phone/other electronics contain evidence that would have captured both the Defendant's statements, CHS-2 statements and illustrate how the alleged conspiracy developed as CHS-2 communicated with everyone related to this alleged conspiracy.  Further, to the extent Defendant was entrapped, the communications between F.B.I. handlers Impola and Chambers and CHS-2 are relevant and material to show how CHS-2, through the F.B.I, influenced the formulation of any alleged conspiracy.  As it relates to Defendant Caserta, Counsel has found a few scattered text messages (pdf's, not in native form) that appear to be between CHS-2 and S.A. Impola.  In one of those text messages S.A. Impola is encouraging CHS-2 (Thor) to see if Caserta would go on a recon:

S.A. Impola:   ... I default to getting as many other guys as possible, so whatever works to maximize attendance...

\*\*\*

S.A. Impola:   I have a few goals for today

\*\*\*

S.A. Impola:   Invite harris [co-defendant Dan Harris] for tomorrow. See if ty [co-defendant Ty Garbin] can swing by for recon. Discuss swinging by location 1 on the way back.  I did see the messenger stuff. The whole leadership thing.

Thor:   Ill push to Harris ty and should be hes already north.. fb all those guys are coming it looks like plus their guys

S.A. Impola:   Yeah, might be a ton of people

Thor:   Bpuff is double dipping joe added him on ww [Wolverine Watchmen] ive been a ghost on their. Joe is also active with that leadership on messenger. Should I echo that to "the boys" chat? (threema)

S.A. Impola:   Tracking.  Yes, echo to The Boys

\*\*\*

Thor:   I push later this morning so everyone will see.

S.A. Impola:   Do you think Caserta would be down for recon too? Or not worth asking

Thor:   I think he would be.

S.A. Impola:   Would fox be good with him coming?

Thor:   Ill ask fox first whole chain command thing.  Hitch is only room for passengers inclined me.  So 4 others.

S.A. Impola:   Roger.  Good Call.

Thor:   We might be filled.  Myself Adam mike shawn and barricade (not sure on his name, but he's confirmed coming via adam)

S.A. Impola:   That would be a good day.

> Thor: You guys following? I've been in contact with red [UCE from FBI] too feeding info about what expect training and weapons to expect. Their working on getting a 3d print block to make ak select fire by ftx. Following us north?
>
> S.A. Impola: I'll call in a bit with details. (**Exhibit 2**)

Counsel does not have the remainder of this thread, the attached exhibit was produced as a pdf with beginning bate stamp number 111,882 and ends 111,885. Whether this 4-page thread was from S.A. Impola or CHS-2 it is believed this was an accidental disclosure by the government as they are refusing access to CHS-2 and S.A. Impola's phone, and information contained thereon.

In the small window the defense has into the communications between S.A. Impola and CHS-2, the F.B.I. is encouraging its paid informant, on F.B.I. phones, to actively bring Caserta into a recon to create an overt act in furtherance of a conspiracy, or create evidence of an agreement regarding a conspiracy.

Additionally, in this thread S.A. Impola is stating he has a few goals for today [recon] and tells CHS-2 to invite co-defendant Dan Harris and co-defendant Ty Garbin for the recon and telling CHS-2 where to take them, "location 1".

CHS-2 (Thor) gets the command from his handler and complies, actively orchestrating and pushing at least one of the overt acts alleged in the Superseding Indictment, that is attempting to corral as many people into the alleged conspiracy as possible. Counsel believes the "recon" is one of two events relied upon by the government as overt acts in the superseding indictment:

Paragraph 9 in the superseding indictment states as follows:

On or about August 29, 2020, ADAM DEAN FOX conducted a daytime surveillance of the Governor's vacation home and drew a map on which he noted approximate distances from the home to police first responders.

4

Paragraph 12 in the superseding indictment states as follows:

> From the night of September 12, 2020, into the early morning of September 13, 2020, ADAM DEAN FOX, BARRY GORDON CROFT, JR., KALEB JAMES FRANKS, and Ty Gerard Garbin conducted a nighttime surveillance of the Governor's vacation home and a nearby public boat ramp, using two-way radios and a night-vision scope.

From the date on the thread, August 28th, it appears they are talking about paragraph 9's August 29th, 2020 recon. However, without the native file, Counsel is left to speculate. While Defendant Caserta did not go on either "recon", it was clearly not for lack of F.B.I. effort.

## **LAW AND DISCUSSION**

Defendant is entitled to production of the materials sought pursuant to Fed. R. Crim. P. 16. Rule 16(a)(1)(B) requires the Government to disclose "any relevant written or recorded statement by the defendant if the statement is within the Government's control and the Government's attorney "could know" that the statement exists. Additionally Rule 16(a)(1)(E) requires the Government to permit defendants "to inspect" documents and objects within the Government's control. Rule 16 grants defendants a broad right of discovery, which includes both exculpatory and inculpatory evidence that is material to the defense. *See United States v. Stampe*, 994 F.3d 767, 771 (6th Cir. 2021). *Stampe*, while very different factually from the present case, lays out the law of discovery, the interplay between *Brady* and Rule 16, and the burden on the defendant attempting to show a material need for evidence yet unknown to the defense:

> "There is no general constitutional right to discovery in a criminal case ...." *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). But due process does protect defendants from government "suppression … of [material] evidence favorable to" them. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been

5

different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). *Brady* creates a freestanding government obligation to disclose material evidence. But it also contemplates that the government might sometimes withhold information either in good or bad faith. And that brings us to specific *Brady* requests for undisclosed materials—something one might call constitutional criminal discovery.

The Supreme Court has explained that a criminal defendant may be able to force disclosure or *in camera* review of some materials if he "establish[es] a basis," "some plausible showing," "for his claim that [something undisclosed] contains material evidence." *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 n.15, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982)). This standard does not appear to require "a particularized showing of what information" is sought for the simple reason that before disclosure a defendant likely will not know the content of an undisclosed item—hence the request. *Id*. But the "plausible showing" standard remains a difficult hurdle; without knowing the content of a requested item, the defendant can likely provide little more than informed speculation as to materiality.

The Constitution is not the only option for criminal defendants though. They may also seek discovery under Federal Rule of Criminal Procedure 16. Relevant to Stampe's appeal, Rule 16(a)(1)(E)(i) provides that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph [a document or object] within the government's possession, custody, or control [if] the item is material to preparing the defense." This court has not fully defined the showing needed to trigger discovery under Rule 16(a)(1)(E)(i). But we have held that "a mere conclusory allegation that the requested information is material to the preparation of the defense" falls short. *United States v. Conder*, 423 F.2d 904, 910 (6th Cir. 1970). Other courts have waded deeper into this issue, and they have come to different conclusions about the required showing. *Compare United States v. Ross*, 511 F.2d 757, 762–63 (5th Cir. 1975), *with United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013). Whatever showing is required, it appears to be less onerous than the showing contemplated by *Ritchie* because Rule 16's materiality bar differs from the *Brady* one—some items "material to preparing the defense" may not necessarily be "material either to guilt or to punishment." *See Muniz-Jaquez*, 718 F.3d at 1183 (concluding that Rule 16 is "broader than *Brady*" because "[i]nformation that is not exculpatory or impeaching may still be relevant to developing a possible defense").

*Stampe at 771*.

Pursuant to Fed. R. Crim. P. 16(a)(E)(i), if requested, the government must permit the defendant to inspect any document or object within the government's possession, custody, or control if that item is material to preparing a defense. *See Id*. The materiality showing under Rule 16 is "less onerous" than the materiality showing under *Ritchie* and *Brady*. *See Id*. "Information that is not exculpatory or impeaching may still be relevant to developing a possible defense." *Id.* (citations and quotation marks omitted).

### Defendant's Cell Phone and Electronic Equipment

Defendant is entitled to review his own electronic data seized by the Government. This issue is not in dispute as the Government has indicated to Counsel it will give this material to the defense. However, Counsel leaves this issue in place as trial is fast approaching and these electronic items typically contain large volumes of data. Defendant's items were seized 10 months ago and have not been produced as of this writing.

### CHS-2, S.A. Impola & S.A. Chamber's Cell Phone and Electronic Equipment

CHS-2's phone and electronic data must be disclosed, or in the alternative S.A. Impola and/or S.A. Chambers cell phones must be disclosed as they relate to communications with CHS-2. Rule 16 grants defendants a broad right of discovery, which includes both exculpatory and inculpatory evidence that is relevant to the defense. *See Stampe*, 994 F.3d at 771.

> The Supreme Court has explained that a criminal defendant may be able to force disclosure or *in camera* review of some materials if he establish[es] a basis, some plausible showing, for his claim that [something undisclosed] contains material evidence.

*Id.* (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 n. 15 (1987). In the matter of *United States v. Mills*, the defendant had sought information contained on cellphones that were

7

in the possession of the government. *See United States v. Mills*, No. 16-cr-20460, 2019 U.S. Dist. LEXIS 126253, at *9 (E.D. Mich. July 30, 2019). After having made the requisite preliminary showing, the Court found the government thereafter satisfied its discovery obligations by permitting inspection of the cellphones.

> The Court finds that the Government—by producing complete data extractions of the devices and making the devices available for inspection—has satisfied its obligations under Rule 16(a)(1)(E). See Fed. R. Crim. P. 16(a)(1)(E) (providing that the "government must permit the defendant to inspect and to copy . . . documents [and] data") (emphasis added). Therefore, Mills's request for "mirror images" is denied.

*Id.*

In this case, CHS-2 is the epicenter of the alleged conspiracy. He is the hub of the wheel, communicating with all the alleged co-conspirators on this indictment and others charged in state court as well as other individuals who remain uncharged. CHS-2 has coordinated with other undercover F.B.I. agents as well as other civilian undercover operatives. Much of this coordination and communication was over F.B.I. phones used by CHS-2, S.A. Impola and/or S.A. Chambers.

This evidence is material to the preparation of the defense because Defendant is likely to assert a defense of entrapment and being able to demonstrate the trajectory of the F.B.I.'s directives to CHS-2 over time and how Defendant's involvement was "instigated by overzealous law enforcement agents . . ." *Sosa v. Jones*, 389 F.3d 644, 648 (6th Cir. 2004) is essential.

To the extent the government asserts that these materials are protected by investigative privilege, that privilege does not prevent disclosure of evidence material to the defense:

> [T]he Supreme Court recognized the government's limited privilege to withhold from disclosure the identity of persons who furnish information of

8

> violations of law to officers charged with enforcement of that law. However, [w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In making the determination, trial courts must balance the public's interest in protecting the flow of information against the defendant's right to prepare a defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, including, among other relevant factors, the crime charged, the possible defenses, [and] the possible significance of the informer's testimony[.] We review a district court's decision on the matter for an abuse of discretion.

*United States v. Beals*, 698 F.3d 248, 269 (6th Cir. 2012). To the extent it is unclear whether the government's interest in protecting this information from disclosure outweighs the Defendant's need for these materials at trial, they may be submitted for in camera review by the court prior to being provided to the Defendant.

> The Supreme Court has explained that a criminal defendant may be able to force disclosure or *in camera* review of some materials if he establish[es] a basis, some plausible showing, for his claim that [something undisclosed] contains material evidence.

*Stampe*, 994 F.3d at 771.

In this case CHS-2 is a paid government informant. He was paid at least $54,000.00 including $6,000.00 in expenses for "a computer, a phone, communication devices and accessories". CHS-2 was involved from the beginning in March 2020 until the end of the investigation on October 7, 2020. In that time, he was the central figure. He was working all sides of the state. Traveling to FTX (field training exercises) in northern Michigan, central Michigan, eastern Michigan and Wisconsin. CHS-2 was in charge of much of the training at the FTX. CHS-2 was on the F.B.I. phone talking, text messaging, videotaping, taking pictures or communicating through encrypted chats weekly, if not daily, with someone associated with the investigation. CHS-2 went on trips out of state for this investigation. CHS-2 had a multi-hour meeting specifically with Mr.

9

Caserta, as well as attended other meetings where Mr. Caserta was located. CHS-2 used his phone to push Caserta to come to a meet for "gear" on October 7, which was actually so the F.B.I. could arrest Caserta.

Looking at the 19 overt acts under Count 1, the individual defendants are in some and not others. However, CHS-2 is involved in almost every one. CHS-2 was involved in much more and much more detail could be given, but, the point again is CHS-2 is the central figure in this investigation and will likely be a significant government witness at the trial.

In addition to communicating with just about everyone in this investigation, CHS-2 was communicating with his handlers, S.A. Impola and/or S.A. Chambers. This is not surprising and would be anticipated. What is surprising, and was unknowable to the defense, is S.A. Impola's encouragement to CHS-2 to bring Caserta into one of two recons, recons that are overt acts in the government's superseding indictment, and thus into the conspiracy. Further, to push the recon into a specific location, location 1. This active participation of the F.B.I. supports the defense theory of entrapment in that the government, or someone acting for the government, induced or persuaded the defendant to commit a crime, or an act in furtherance of the crime. See 6th Circuit Pattern Instruction 6.03 ENTRAPMENT.

The text thread produced seems to begin mid-conversation, Counsel does not have CHS-2's or S.A. Impola's phone extractions to determine who/when the conversation began, nor when it ends. Counsel only discovered the text message thread (Exhibit 2) as it was buried within hundreds of thousands of pdf reports, documents, text messages, audio recordings and photographs. This type of evidence is material and critical to the

defense that CHS-2 was actively attempting to pull a conspiracy together, create overt acts and he was doing it as a paid informant at the behest and direction of his F.B.I. handlers.

This type of information is typically locked away from defendants. Defendants who pursue what they suspect might be material information run into the "fishing expedition" reply by the government. Generally, they are right, a criminal defendant in federal court runs into this wall and would never know there was evidence to be had. In Counsel's experience the government generally would not download and inspect the informants' interactions with F.B.I. agents for Giglio, Jenks, Brady or Rule 16 material. In this case it is unclear if CHS-2's phone was extracted at all. It would never be known by the government and never become known to the defense. In this case it is believed an accidental download of a few screen shots of either CHS-2 or S.A. Impola's phone was inadvertently disclosed to the defense. This is the only reason we can make any showing of materiality.

Toward the end of the text thread after S.A. Impola and CHS-2 coordinate to get as many people into this overt act as possible S.A. Impola indicates "Are we on Saturday or Sunday? And **I default to getting as many other guys as possible, so whatever works to maximize attendance**."… "**That would be a good day**". In other words, if CHS-2 could induce or persuade (whatever works) as many people as possible to commit a crime, or an act in furtherance of the crime, i.e. the recon, the F.B.I.'s conspiracy theory gets better, the government could convict more people and that would be a good day.

WHEREFORE, Defendant, Caserta, requests this Court order:

11

The Government produce for inspection and copying the forensic imaging data/data extracted for forensic examination or, in the alternative, the physical phone for inspection and forensic examination of:

(1) Defendant's cellular phone and associated electronics seized by the government;

(2) the cellular phone used by CHS-2 (confidential human source) and associated electronics supplied and/or paid for by the government;

(3) the cellular phone used by S.A. Impola during this investigation;

(4) the cellular phone used by S.A. Chambers during this investigation.

Or, in the alternative, set a hearing date for testimony to determine materiality of the requested disclosure;

Or, in the alternative, order the production of the forensic imaging for an in camera review to determine materiality.

Respectfully Submitted,

HILLS LAW OFFICE, P.C.

Dated: July 12, 2021

  /s/Michael D. Hills  
Michael D. Hills (P58571)  
Attorney for Defendant

BUSINESS ADDRESS:  
425 South Westnedge Ave  
Kalamazoo, MI 49007  
269-373-5430  
mhills@hillslawoffice.com