UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                          No. 1:20-CR-183

       vs.                                  Hon. Robert J. Jonker
                                               Chief United States District Judge

BRANDON MICHAEL-RAY CASERTA,

        Defendant.
_____/

**GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION IN LIMINE**
**TO EXCLUDE VIDEO RECORDED STATEMENT**

Brandon Caserta moves to exclude a video in which he tells his co-conspirators what to do with police if "we" encounter them on a "recon." Those statements are probative of his intent to join the conspiracy, and of planning and preparation to further its aims. The anti-state sentiments he expresses in the video also show his motive to kidnap the Governor. Because Caserta has raised the defense of entrapment, the video is doubly relevant to show predisposition. The probative value of the video substantially outweighs any risk of unfair prejudice or misleading the jury, and should be admitted.

FACTS

Caserta is charged with conspiring to kidnap the Governor of Michigan, in violation of 18 U.S.C. § 1201(c). (R.172: S. Ind., PageID.961.) In preparation for the kidnapping, members of the conspiracy conducted two reconnaissance trips to the Governor's home, on August 29 and September 12, 2020. (*Id*., PageID.964-65.)

On October 7, 2020, Caserta posted a video in which he told his co-conspirators what to do if they encountered police on a future reconnaissance. In the video, Caserta stated:

> And I'm telling you what, right now, man. I'm going to make this shit 100% clear, dude. If this shit goes down, okay? If this whole thing, you know, starts to happen, I'm telling you what, dude, I'm taking out as many of those motherfuckers as I can. Every single one, dude, every single one. And if you guys are going to give any of these motherfuckers a chance, any of these gang fucking criminal ass government thugs that rob people every day, if you're even going to give them a second to try to speak or tell their story, don't even fuck with me, dude. Don't even fuck with me.
>
> I have zero patience for immoral coward criminals. Okay? And guess what? I'm sick of being robbed and enslaved by the state, period. I'm sick of it. And these are the guys who are actually doing it. You know? So if, if, you know, if if we're doing a recon or something and we come up on some of them, dude, you better not give them a chance. You either tell them to go right now, or else they're going to die. Period. That's what it's going to be, dude, because they are the fucking enemy, period.

(R.242: Def's Br., PageID.1310.)

These sentiments are consistent with the conspiratorial, anti-government outlook that motivated Caserta to join the conspiracy. For instance, in a recorded conversation on July 11, 2020, Caserta and co-conspirator Barry Croft said that the government would not listen to them unless compelled by force:

> Caserta: I'm in the *government*, bro. You can't do shit to me, you know? I have the monopoly on force. I have the monopoly on physical violence and confiscation of property, and wealth. No, you don't, dude.
>
> Croft: But see, that's my point though, listen. If you were to, like I was telling him, man, nonlethal operations. Go "Pearl Harbor" a fleet of fucking state-owned vehicles, State Police vehicles that they will assault you with.
>
> Caserta: Right.

Caserta expanded on his anti-state views in a recorded discussion on August 23, 2020, when he rejected the idea of "arresting" the Governor under some pretense of law. He stated, "Something he said though, that I'm not down with, is … getting um, what'd he call it,

2

deputized, or something … I'm an anarchist so I'm not about fucking politics or any of that shit." He later added, "I will never ask permission from the state to go against them."

Materials found at Caserta's residence the same day included books on "Practical Anarchy," and "The Case Against the State."




In an encrypted chat with Adam Fox ("AlphaFuckYou") on September 4, 2020, Caserta ("DebasedTyrant") opined that the Governor is the puppet of shadowy conspiratorial forces, and agreed with Fox that "making her disappear" would be a justifiable way to frighten them:

3



Shortly before the nighttime reconnaissance of the Governor's home on September 12, 2010, Fox told Caserta, "The whole point of this is to send a message. Because it doesn't matter. If we, if we cut her out, that don't matter. There's still the puppet masters above. The whole point of this is we're sending a message to *them*. Hey, if we can get her, we can get *you*." Caserta responded, "I mean, that's gonna take a lot of time, too, and like intelligence and shit, for sure."

Caserta did not accompany the other conspirators on the nighttime reconnaissance, but attended a meeting with them the next morning. Fox told them, "If we wanna do this, it's gonna be, being ready, but it's gonna be being opportunistic. Like, it's gonna be, when the asset arises there, boom, we gotta go, like. That's another key reason why we need f***ing, like, local intel.

4

We need to get in with the locals a little bit. We're gonna have to keep doing recons." Caserta directly referenced the "recons" in the October 7, 2020 video he now moves to suppress.

LAW AND ARGUMENT

1. *<u>The video is probative of intent, plan, preparation, and motive.</u>*

Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. Fed. R. Evid. 401. Relevant evidence is admissible unless the Constitution, a federal statute, or another rule of evidence provides otherwise. Fed. R. Evid. 402.

The elements of a kidnapping conspiracy under 18 U.S.C. § 1201(c) are the same as for a general conspiracy under 18 U.S.C. § 371. *See,* 2 Modern Federal Jury Instructions-Criminal, § 42.01 (2021). That is: (1) two or more persons conspired, or agreed, to commit the crime of kidnapping; (2) the defendant knowingly and voluntarily joined the conspiracy; and (3) a member of the conspiracy did one or more of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy. Sixth Circuit Pattern Criminal Jury Instructions § 3.01A (2021).

"Evidence of a defendant's association and dealings with a group of conspirators, even when he knows they intend to commit a crime, does not alone show that he himself had the requisite intent to join the conspiracy. In every conspiracy case, therefore, a not guilty plea renders the defendant's intent a material issue and imposes a difficult burden on the government. Evidence of such extrinsic offenses as may be probative of a defendant's state of mind is admissible unless he 'affirmatively takes the issue of intent out of the case.'" *United States v. Roberts*, 619 F.2d 379, 383 (5th Cir. 1980), citing *United States v. Williams*, 577 F.2d 188 (2d Cir. 1978).

5

Even unrelated prior bad acts (let alone *res gestae*, as here) can be relevant to show motive, intent, plan, preparation, or knowledge. Fed. R. Evid. 404(b); *United States v. Wright*, 16 F.3d 1429, 1442 (6th Cir. 1994) (evidence is probative if its purpose is to establish the doing of a criminal act as a step toward completing a larger criminal plan). It can also be relevant to show knowledge of co-defendants' activity. *United States v. Rodriguez*, 882 F.2d 1059, 1064-65 (6th Cir. 1989).

The government carries the heavy burden of showing Caserta did more than just associate with other conspirators. It must prove his state of mind – that is, that he joined the plot intentionally. By pleading not guilty, Caserta has put the government to its proof on all the elements of the offense, including intent.

In the video, Caserta does not just blow off steam about a traffic ticket; he tells his co-defendants what to do if "we" (as opposed to "you") encounter police on a "recon." In a vacuum, Caserta's remark that kidnapping the governor would "take a lot of time … and intelligence" could be construed as mere commentary on a plot he knew about but did not join. The video, however, proves Caserta intended to be part of the intelligence gathering himself.

Caserta's anger about a traffic ticket may have influenced the timing and the tone of the video. But as an avowed anarchist, animus against the "disposable house slaves" of the state (i.e., the police) was also his motive for joining the conspiracy. Caserta's expression of willingness to kill police officers on a "recon" also makes more likely he was really willing to target the head of state herself.

The video is also relevant to show at least one conspirator committed an overt act in furtherance of the conspiracy. The statement is itself a specified overt act in the indictment, proof of which would meet the third element of the offense. Contrary to Caserta's suggestion, an overt

6

act need not be physical. *See, United States v. Donner*, 497 F.2d 184, 192 (7th Cir. 1974) (statements at press conference constituted words rather than action; even constitutionally protected speech may nevertheless be an overt act in a conspiracy charge.).

Caserta proffers that the video was solely a reaction to getting a traffic ticket. He is free to argue that at trial, but that argument goes to weight, not admissibility. By analogy, a burglar might instruct co-conspirators to shoot any dogs they find at the target home. Even if the burglar had some independent reason for hating dogs, the statement would still show he was part of the conspiracy.

2. *The video is probative of predisposition.*

There is no entrapment where government agents "merely afford opportunities or facilities for the commission of the offense." *Sherman v. United States*, 356 U.S. 369, 372 (1958). "A valid entrapment defense requires proof of two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal activity." *United States v. Al-Cholan*, 610 F.3d 945, 950 (6th Cir. 2010).

When a defendant raises the entrapment defense, the government bears the burden of proving predisposition beyond a reasonable doubt. *United States v. Nelson*, 847 F.2d 285, 287 (6th Cir. 1988). This is a question of fact for the jury. *Id*. The defense permits the accused to examine the conduct of government agents, but "on the other hand, the accused will be subjected to an appropriate and searching inquiry into his own conduct and predisposition as bearing on his claim of innocence." *Sherman*, 356 U.S. at 373.

Caserta has signaled that he may rely on a defense of entrapment. (R.226: Brief in Support of Motion to Compel Discovery, PageID.1241.) An "unwary innocent" might utter profanities about the police after receiving a traffic ticket. But Caserta described the incident as

7

being "robbed by the state," and said, "Let this shit go down … I'm so fuckin' ready man." (R.242: Def's Br., PageID.1311.) The video demonstrates Caserta needed no persuasion to join the conspiracy, and also shows he knew the kidnapping was "about to go down."

    3. *The probative value of the evidence substantially outweighs the risk of unfair prejudice.*

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice. Fed. R. Evid. 403. "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. Bonds*, 12 F.3d 540, 575 (6th Cir. 1993) (practices of the Aryan Brotherhood not unfairly prejudicial), citing *United States v. McRae*, 593 F.2d 700 (5th Cir. 1979). As that court observed:

> Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect. As to such, Rule 403 is meant to relax the iron rule of relevance, to permit the trial judge to preserve the fairness of the proceedings by exclusion despite its relevance. It is not designed to permit the court to "even out" the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none.

*McRae*, 593 F.2d at 707.

"One factor in balancing unfair prejudice against probative value under Rule 403 is the availability of other means of proof." *United States v. Jenkins*, 593 F.3d 480, 485 (6th Cir. 2010) (probative value of old, unrelated drug convictions was low where the other evidence of knowledge and intent to distribute was "overwhelming.")

Evidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403. *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996); *see also United States v. Cintora-Gonzalez,* 569 Fed. Appx. 849 (11th Cir. 2014) (defendant's "serious threats" to individual who owed him a drug debt evidenced existence of

8

charged drug conspiracy); *United States v. Levy*, 594 F. Supp. 2d 427, 440 (S.D.N.Y. 2009) (videos of child pornography "not unfairly prejudicial, as this was conduct that Levy chose to engage in.").

In *Sanders*, above, the defendant sought to exclude a letter between co-conspirators that portrayed him as out to "screw" his partners. *Sanders*, 95 F.3d 453. The letter was properly admitted because it formed the basis of some of the charges in the indictment. *Id.* It also tied the defendant to the activities of the conspiracy because it was written during the conspiracy and referred to acts of the conspiracy. *Id.* "The letter prejudice[d] Sanders by making him look bad, but [did] not unfairly prejudice him by confusing or misleading the jury." *Id.*

Caserta's Facebook video is the modern equivalent of the letter between conspirators in *Sanders*. The communication itself forms the basis of part of the indictment: Count 1, Overt Act #18. (R.172: S. Ind., PageID.966.) The video also ties Caserta to the activities of the conspiracy because it was posted during the course of the conspiracy, and refers to an act of the conspiracy. While the video paints him in a bad light, it is neither unfairly prejudicial nor likely to mislead the jury. To the extent Caserta's excited tone and use of profanity are unflattering, he has only himself to blame for his word choice.

Finally, in balancing probative value against unfair prejudice, the Court must consider the availability of other means of proof. Caserta is almost certain to offer his absence from the nighttime reconnaissance of September 12, 2020 as evidence that he was not part of, or withdrew from, the conspiracy. But in the video posted a week later, he says what he and the others should do with police when "we" are doing a recon. This is more than marginally probative – it is *the* best evidence that Caserta was predisposed to target the Governor, joined the conspiracy, and was still part of it until the end.

WHEREFORE, the government requests the Court deny Caserta's motion in limine to exclude his video recorded statement of October 7, 2020.

                                                      Respectfully submitted,

                                                      ANDREW BYERLY BIRGE
                                                      United States Attorney

Dated:  August 26, 2021                 /s/ Nils R. Kessler
                                                      NILS R. KESSLER
                                                      AUSTIN J. HAKES
                                                     Assistant United States Attorneys
                                                     P.O. Box 208
                                                     Grand Rapids, MI 49501-0208
                                                     (616) 456-2404
                                                     *nils.kessler@usdoj.gov*