UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ADAM DEAN FOX,
BARRY GORDON CROFT, JR.,
DANIEL JOSEPH HARRIS,
KALEB JAMES FRANKS, and
BRANDON MICHAEL-RAY CASERTA,

        Defendants.
_____/

No. 1:20-cr-183

Hon. Robert J. Jonker
Chief United States District Judge

## GOVERNMENT'S MOTION IN LIMINE TO ADMIT
## OTHER ACTS EVIDENCE UNDER RULE 404(b)

The defendants have signaled their intent to claim they were entrapped, among other defenses. The government intends to offer "other acts" evidence under Rule 404(b) to establish their criminal predisposition.

## FACTS

1.    Between June and October 2020, the defendants conspired to kidnap the Governor of Michigan. (R. 172: Superseding Indictment, PageID.961.) The conspirators planned to invade the Governor's vacation home to abduct her, and use firearms (some illegally possessed) to overpower her protection detail. (*Id.*, ¶¶ 9-17, PageID.964-65.) Defendants Fox, Croft and Harris also conspired to use explosive devices as part of the plot. (*Id.*, PageID.967.) Defendant Harris possessed a short-

barreled AM-15[1] rifle prohibited by the National Firearms Act, with which he trained to carry out the assault. (R. 172: Superseding Indictment, PageID.970.)

2. The defendants have indicated they will pursue a defense of entrapment. (*See, e.g.,* R. 338: Mot. Hr'g Tr., PageID.2045.)

3. Several of the defendants engaged in uncharged misconduct before and during the conspiracy that is relevant to show they were predisposed to commit those offenses. For example:

    a. On multiple occasions in 1994, Croft conspired with other criminals to steal cars, and to burglarize an apartment complex in Newark, Delaware. (Newcastle County Dept. of Public Safety, Criminal Complaint Nos. 32-94-129191, 131683, 136255.) In police interviews, he initially claimed he was just driving the other suspects. He was charged with Conspiracy, Second and Third Degree; and charged and convicted of Burglary, Third Degree, in Newcastle County Superior Court.

    b. In April 1997, Croft was arrested after a drive-by shooting in Newark, Delaware. Croft fired a handgun at a victim from the open window of his car and fled the scene. (Newcastle County Dept. of Public Safety, Criminal Complaint No. 32-97-041008.) In a police interview, he initially claimed he only had a pellet gun. He later pled guilty to possessing a firearm during the commission of a felony in Newcastle County Superior Court.

---

[1] An "Anderson Manufacturing" version of the ubiquitous AR-15 style, .223 caliber semiautomatic assault rifle.

      c.      In June 2013, Franks broke into a residence and stole money and a checkbook. He lied to police by saying that he did not commit the crime, until confronted with fingerprint evidence proving he had been inside the home. (South Lyon Police Department, CR No. 130002352-001.) He was convicted of Home Invasion, Second Degree (with a 2nd offense enhancement) and sentenced to 365 days in jail.

      d.      On August 14, 2020, Harris sawed the barrel off his 12-gauge pump-action shotgun, making it a prohibited weapon under the National Firearms Act (26 U.S.C. § 5845(a)(1)). Possession of such a weapon is a 10-year felony. (26 U.S.C. § 5861(c),(d)). He texted pictures of the process to other members of the conspiracy. (Attachment 1.)

      e.      In September 2020, Franks and Harris conspired to manufacture unregistered "ghost guns" and sell them to a felon with whom Franks had been incarcerated. In a recorded discussion, Franks and Harris planned to charge the buyer three times the actual value of the guns (two Glock semiautomatic pistols and an AR-15 style assault rifle) because they knew he could not legally purchase them from a firearms dealer. (Attachment 2.) It is a 10-year felony to knowingly transfer a firearm to a convicted felon. (18 U.S.C. § 922(d)).

## LAW AND ARGUMENT

"The Supreme Court has recognized two elements to a valid entrapment defense: government inducement of the crime, and a lack of predisposition on the

part of the defendant to engage in the criminal conduct." *United States v. Harris*, 9 F.3d 493, 497 (6th Cir. 1993), citing *Mathews v. United States*, 485 U.S. 58, 63 (1988). Predisposition "focuses upon whether the defendant was an 'unwary innocent' or instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetuate the crime." *Id.*

Evidence of other crimes, wrongs or acts is not admissible to prove a person' character in order to show that on a particular occasion the person acted in accordance with the character. Fed. R. Evid. 404(b)(1).[2] Such evidence may be admissible for other purposes; such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident. Fed. R. Evid. 404(b)(2). This rule "is actually a rule of inclusion rather than exclusion, since only one use is forbidden and several permissible uses of such evidence are identified." *United States v. Daniels*, 948 F.2d 1033, 1035 (6th Cir. 1991).

The list of proper purposes for 404(b) evidence is not exclusive. *United States v. Mandoka*, 869 F.3d 448, 459 (6th Cir. 2017). For instance, the government may use evidence of other crimes to establish predisposition on the part of a defendant who relies on the defense of entrapment, provided the other crimes are similar in nature to those charged. *United States v. Blankenship*, 775 F.2d 735 (6th Cir. 1985) (countering an entrapment defense with evidence of other crimes and wrongs in order to show criminal predisposition "is a permissible use of such evidence not

---

[2] Evidence that is intrinsic to the crimes charged does not implicate Rule 404(b). *United States v. Monea*, No. 96-3443, 1997 U.S. App. LEXIS 31853, at *6 (6th Cir. Nov. 7, 1997); *United States v. Manning*, 79 F.3d 212, 218 (1st Cir. 1996).

4

explicitly referred to in Rule 404(b), but generally recognized"); *United States v. Franco*, 484 F.3d 347, 352 (6th Cir. 2007) ("When entrapment is raised as a defense, the criminal defendant makes his own character an essential trial issue.")

The Sixth Circuit "has rejected a narrow interpretation of the similarity required for a prior conviction to support predisposition for entrapment." *United States v. Wilson*, 653 F. App'x 433, 438-39 (6th Cir. 2016). While predisposition evidence must be based on conduct near enough in kind to support an inference that the defendant's purpose included offenses of the sort charged, "it is not necessary that the past conduct be precisely the same as that for which the defendant is being prosecuted." *United States v. Al-Cholan*, 610 F.3d 945, 951 (6th Cir. 2010).

The admissibility of 404(b) evidence does not turn on whether the defendant was charged with, or convicted of, a crime. *United States v. Hunter*, 672 F.2d 815, 817 (10th Cir. 1982). The acts underlying a conviction may be admissible to show intent even where the resulting conviction has been expunged. *United States v. Kelley*, 981 F.2d 1464, 1472-73 (5th Cir. 1993). Juvenile adjudications may likewise be admitted. *Bronzino v. Clinton Twp. Police Sergeant Dunn*, 558 F. App'x 613, 614 (6th Cir. 2014); *United States v. Bailey*, 840 F.3d 99, 126 (3d Cir. 2016). "Other acts" admitted under the Rule may be either prior, during, or after the charged offenses. *United States v. Perry*, 438 F.3d 642, 653 (6th Cir. 2006), citing *United States v. Pollard*, 778 F.2d 1177, 1179-80 (6th Cir. 1985); *United States v. Bundy*, 1990 U.S. App. LEXIS 17772, at \*17 (6th Cir. Oct. 5, 1990).

5

The government intends to introduce various acts intrinsic to the kidnapping conspiracy to show the defendants' predisposition. (*e.g.,* Brandon Caserta's exhortation to kill police officers encountered during a "recon." R. 339: Order, PageID.2107, fn. 3.) These do not implicate Rule 404(b). *United States v. Monea*, No. 96-3443, 1997 U.S. App. LEXIS 31853, at *6 (6th Cir. Nov. 7, 1997). The extrinsic "other acts" are admissible under Rule 404(b) to show predisposition, and for other purposes enumerated in the Rule, as identified below.

Barry Croft was no unwary innocent; but rather a repeat offender with a history of blame shifting. Two of his prior bad acts are particularly relevant to show predisposition in this case: His history of car thefts and burglary shows Croft would have no compunctions about entering the private property of another to commit a felony. His felony firearms conviction shows a similar predisposition to commit serious crimes. Moreover, the unprovoked discharge of a firearm at an unarmed victim refutes any suggestion that he possessed firearms for "defensive" or "Second Amendment demonstration" purposes.

Like Croft, Franks also has a substantial criminal record. While his narcotics trafficking convictions are of minimal relevance in this case, his home invasion charge bears directly on an entrapment defense. Based on prior motions and arguments, Franks is expected to claim his incriminating oral statements were just "big talk," which he was persuaded to utter by an informant. (R. 39: Prelim. Hr'g. Tr., Vol. I, PageID.127.) But Franks showed his readiness to invade another's home—of his own accord—long before his involvement in this offense.

Franks and Harris also demonstrated their predisposition to commit serious crimes in their "ghost gun" plot. As Attachment 2 demonstrates, both defendants made and prepared to deliver untraceable high-capacity semiautomatic firearms to a dangerous felon for profit. This was more than just talk – they bought the parts, completed the guns, and negotiated the sale. They also covertly drove to the buyer's residence to reconnoiter approach and escape routes, just as Franks and others did with the Governor's home the night of September 12, 2020. This *modus operandi* evidence shows Franks' participation in the nighttime surveillance was purposeful and criminal. It also corroborates other expected testimony that Harris was left behind on September 12, 2020 by happenstance, and not because he opposed reconnoitering her house.

Finally, Harris may claim he was unaware that his prohibited AM-15 rifle had an illegally short barrel. He has not yet been charged with possessing the short-barreled shotgun pictured in Attachment 1, because the shotgun was made, possessed, and seized in the Eastern District of Michigan. That he purposely sawed off a different gun barrel shows not only predisposition and intent, but also knowledge and absence of mistake as to the illegal characteristics of his AM-15 rifle.

WHEREFORE, the government moves for a preliminary ruling that the other bad acts identified in this motion are admissible to demonstrate predisposition.

                                Respectfully submitted,

                                ANDREW BYERLY BIRGE
                                United States Attorney

Dated: December 17, 2021           */s/ Nils R. Kessler*
                                NILS R. KESSLER
                                Assistant United States Attorney
                                P.O. Box 208
                                Grand Rapids, MI 49501-0208
                                (616) 456-2404
                                *nils.kessler@usdoj.gov*