UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**
            Plaintiff,

v.

**ADAM FOX,**
**BARRY CROFT,**
**DANIEL HARRIS,**
**KALEB FRANKS,** and
**BRANDON CASERTA,**
            Defendants.

Case No. 1:20-cr-00183-RJJ

Hon. Robert J. Jonker
Chief United States District Judge

---

**MOTION TO COMPEL GOVERNMENT TO IDENTIFY KNOWN BRADY MATERIAL CONTAINED WITHIN DISCOVERY DUMP**

---

"He who must search a haystack for a needle is likely to end up with the attitude that the needle is not worth the search." *Brown v. Allen*, 344 U.S. 443, 537, 73 S. Ct. 397, 425, 97 L. Ed. 469 (1953).

---

**NOW COME** the Defendants, by their counsel, and move this Court for an order directing the government to identify known *Brady* material within the recent voluminous discovery dump, identify evidence contained therein which it intends to

1

introduce at trial, and identify which documents contained therein are duplicates of previously produced discovery.

## STATEMENT OF FACTS

The discovery in this case is voluminous. The case has been pending for 14 months. On the eve of trial, the government has dumped nearly as much discovery on the defendants as it did in the preceding year.

Concerned about the ability to proceed to trial on schedule, in July 2021, Defendants moved for early designation of witnesses and exhibits. Mot. Early Designation, ECF No. 216, PageID.1163. The Court denied the motion on the record before it. Order, ECF No. 310, PageID.1843-1846.

At the time of the July motion, the government had produced over 140,000 pages of discovery spanning 23,000 electronic files. Brief, ECF No. 217, PageID.1164.

In September 2021, the government requested the coordinating discovery attorney ("CDA") send a drive for duplication of another discovery dump. Almeida Decl. at ¶5, attached as Exhibit A. That drive was overnighted to the government on September 13th. *Id.* The government sat on the drive until November 30th when it returned the drive to the CDA. *Id.* When returned to the CDA, the drive contained a discovery production dated September 15, 2021 and November 17, 2021 along with a number of "media" files. *Id.* at ¶6. The combined production sent to the CDA on November 30th contains 385 gigabytes of data spanning 124,782 data files. *Id.* There were 4,105 new pdf documents totaling 27,660 pages in the new dump. *Id.* at ¶8.

2

There was 914 hours of audio and video produced on the new dump along with 5,556 jail calls produced in non-native format which accounted for 62 hours. *Id.* at ¶8-10.

As of filing, trial is 79 days away. To review just the audio and video discovery produced[1] in the latest dump, it would take an average of 11.5 hours per day, every day between now and trial. This doesn't account for reviewing the 27,660 pages of documentary discovery, other items produced, and likely *Jencks* materials that are coming.

In order to triage review and keep the trial date on track, undersigned counsel requested the government identify three categories of evidence from this dump:

1) any piece of evidence which the government intends to introduce at trial;

2) any material which the government has identified as *Brady* or *Giglio*;

3) any material which is substantively, even if not cryptographically, a duplicate of a prior item produced (e.g., same document but with different Bates numbers applied).

The government has stated that it will not produce this information.

A year ago, during a December 10, 2020 strategy session with Wisconsin-based CHS Steve, Special Agent Impola highlighted the government's plan regarding *Brady* material explaining that the "best chance is to create utter confusion and chaos" by having over-inclusive disclosures. Audio tape: CHS

---

[1] The CDA is still processing this discovery into a format that is useable by defense counsel and it is not in possession of defense counsel yet.

3

Questioning by Special Agents Henrik Impola, Jayson Chambers, and Corey Baumgartner at 2:07:00 (December 10, 2020) (on file with author). Another agent explained that while they must turn over all the evidence, **"we don't have to tell anybody which part is important or not."** *Id.* at 2:06:11. Impola seems to believe he doesn't have to play fair because he believes that the defense counsel in this case are "paid liars" whose job is to "take the truth and portray it in a different sense". *Id.* at 58:15.

In the previous motion, counsel noted that it had no evidence that the Agents' expressed intention to play discovery games had infected the production. *See* Brief, ECF No. 217, PageID.1166. This is no longer the case. The timing and size of the most recent dump calls into serious question whether Mr. Impola's promise to play discovery games and hide the *Brady* material within a larger, duplicative, and partially irrelevant dump has come to fruition.

## LAW AND ARGUMENT

The Federal Rules of Criminal Procedure "are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." Fed. R. Crim. P. 2.

Due process requires the Government to provide a criminal defendant with favorable material evidence in its possession. *Brady v. Maryland*, 373 U.S. 83, 86, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Brady rule safeguards the fundamental principal that a trial is a search for the truth. It also protects the Government's

4

unique interest in a criminal prosecution "not [to] win a case, but [ensure] that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). When *Brady* material is withheld, the Government's case is "much stronger, and the defense case much weaker, than the full facts would have suggested." *Kyles v. Whitley*, 514 U.S. 419, 429, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

Generally, a defendant does not have a right to be directed to exculpatory evidence within a larger body of material. *United States v. Warshak*, 631 F.3d 266, 297 (6th Cir. 2010) (citing *United States v. Skilling*, 554 F.3d 529 (5th Cir.2009) but *cf. United States v Presser,* 844 F.2d 1275, 1285, n12 (6th Cir. 1988) (acknowledging that while R. 16 provides no authority for compelling the government to disclose *Brady* material that the court may have "some inherent power" to compel disclosure of specific evidence when justice requires it).

However, *Warshak* court noted that *Skilling* held open the possibility that voluminous productions could violate *Brady*:

> We do not hold that the use of a voluminous open file can never violate *Brady*. For instance, evidence that the government "padded" an open file with pointless or superfluous information to frustrate a defendant's review of the file might raise serious *Brady* issues. Creating a voluminous file that is unduly onerous to access might raise similar concerns. And it should go without saying that the government may not hide *Brady* material of which it is actually aware in a huge open file in the hope that the defendant will never find it. These scenarios would indicate that the government was acting in bad faith in performing its obligations under *Brady*.

5

*United States v. Warshak*, 631 F.3d 266, 297 (6th Cir. 2010); see also *United States v. Hsia*, 24 F.Supp.2d 14, 29–30 (D.D.C.1998) ("The Government cannot meet its Brady obligations by providing ... 600,000 documents and then claiming that [the defendant] should have been able to find the exculpatory information[.]"); *United States v. Saffarinia*, 424 F. Supp. 3d 46, 86 (D.D.C. 2020) (holding that government's *Brady* obligations require it to identify any known *Brady* material to the extent that the government knows of any such material in its large discovery production.).

    Here, the government is purporting to produce broad discovery to favor the Defendants while doing so at such a late stage that the Defendants cannot possibly review it all and while refusing to identify even the known *Brady* material within the disclosure.

    As promised by Special Agent Impola and his colleague, they have created "utter confusion and chaos" by waiting until a late date and then turning over "everything" but not identifying the important parts. Put another way, the government has "padded" a purported open file with so much information that it frustrates the defendant's ability to review the file. *Warshak*, 631 F.3d at 297. By creating such a "voluminous file that is unduly onerous to access", producing it at such a late date, and refusing to identify either the items they intend to introduce at trial or the known *Brady* material contained therein, they have abdicated their obligation to make effective *Brady* disclosures and are effectively denying the defendants' access to *Brady* material.

6

**WHEREFORE** the defendants, Adam Fox, Barry Croft, Kaleb Franks, Daniel Harris, and Brandon Caserta respectfully request this Court enter an order requiring the government to 1) identify the known *Brady* and Giglio evidence contained within the discovery production, 2) identify any documents which the government intends to introduce, and 3) identify any documents in the production which are substantively a duplicate of a previous production.

                                                       Respectfully submitted:

Dated: December 18, 2021    /s/ Joshua A. Blanchard
　　　　　　　　　　　　　　Joshua A. Blanchard
　　　　　　　　　　　　　　Attorney for Barry Gordon Croft, Jr.
　　　　　　　　　　　　　　BLANCHARD LAW
　　　　　　　　　　　　　　309 S. Lafayette St., Ste. 208
　　　　　　　　　　　　　　Greenville, MI 48838
　　　　　　　　　　　　　　616-773-2945
　　　　　　　　　　　　　　josh@blanchard.law

Dated: December 18, 2021    /s/ Christopher Gibbons
　　　　　　　　　　　　　　Christopher Gibbons
　　　　　　　　　　　　　　Attorney for Adam Fox

Dated: December 18, 2021    /s/ Scott Graham
　　　　　　　　　　　　　　Scott Graham
　　　　　　　　　　　　　　Attorney for Kaleb Franks

Dated: December 18, 2021    /s/ Michael Hills
　　　　　　　　　　　　　　Michael Hills
　　　　　　　　　　　　　　Attorney for Brandon Caserta

Dated: December 18, 2021    /s/ Julia Kelly
　　　　　　　　　　　　　　Julia Kelly
　　　　　　　　　　　　　　Attorney for Daniel Harris

## Certificate of Compliance with LCrR 47.2(b)(ii)

I certify that this motion and brief contains 1,445 countable words as defined by LCrR 47.2(b)(i) and as calculated by Microsoft Word 16.55.

Dated: December 18, 2021                          /s/ Joshua A. Blanchard
                                                                   Joshua A. Blanchard