UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

BRANDON MICHAEL-RAY CASERTA,

    Defendant.

_____/

CASE No. 1:20-CR-183-6

HON. ROBERT J. JONKER

## ORDER

The government alleges that Defendant Caserta joined a kidnapping conspiracy, and that in the course of the conspiracy Defendant Caserta made two statements to a confidential human source (CHS Dan) in August 2020 that advocated the use of force against contact-tracers during the COVID-19 pandemic.[1] The relevant statements read as follows:

> Brandon Caserta: Okay, well then, I would say at that point, it's action time. You know, either we figure out where the shipments are at.
>
> CHS Dan: Right. [unintelligible]
>
> Brandon Caserta: We figure out which doctors are administering. Huh?
>
> CHS: That's where you want to hit those, like, shipment routes?
>
> Brandon Caserta: I think that should be something on the table. I think we should be able to, accost large shipments. I think we should be identifying which doctors in our area are pushing for a [unintelligible] Um, I think we need to also figure out who's contact tracing. Where [unintelligible]

---

[1] The State of Michigan's Coronavirus website describes contact tracers as public health staff who speak with those who have, or are suspected to have, been infected with the COVID-19 virus. Staff ask those individuals about close contacts, then then call anyone who may have been exposed. *Trace*, MICHIGAN.GOV, https://www.michigan.gov/coronavirus/0,9753,7-406-99891_99913---,00.html (last visited Feb. 28, 2022).

> CHS Dan: Census? Right
>
> Brandon Caserta: Right, census and stuff like that. Like, like they're hiring. You can go on Michigan.gov and, and they'll have applications for contact tracing. We need to figure out where those facilities are located and even, even call and, and act like we're going to put in an application or something. And, and figure out who is running it and, and, and what's going on with them. Because I'll tell you what, you know, if, if things start to get really bad, and, and let's say they start, cause what's going to happen is they're going to start contact tracing people and then they're going to start quarantining people cause they're going to get positive results, [unintelligible] 80% false positive.
>
> CHS Dan: That fucking thing going on with your cell phones. [unintelligible]
>
> Brandon Caserta: Yeah, and the Google thing going on, too? Yeah.
>
> CHS Dan: I went through there, nixed that bitch.
>
> Brandon Caserta: Yeah. And, and so they're using that. I'll tell you what, if, if things start to get really bad and start getting put out in quarantine cause they don't have the facilities to [unintelligible]. We can need to figure out where those facilities are at. But also, you know, we have to think of some of the contact tracers. I don't call it contact tracing, I call it constitution trampling.
>
> ***
>
> Brandon Caserta: If things get a little bit bad, I think a, a possibility should be on the table to eliminate some contact tracers. Then we're going to create, we're going to create a dynamic where no one wants to be a contact tracer cause they might fucking die.

Caserta Br. 2-3, ECF No. 492 (PageID.3797-3798).

Defendant Caserta says that the statements have nothing to do with any alleged kidnapping and are simply part of a speculative conversation about hypothetical situations in which a COVID-19 vaccine (which had not at the time been approved for wide release) is developed and in which citizens are forced against their will into government-run quarantine centers. He moves to exclude these statements as irrelevant and unfairly prejudicial. (ECF No. 491, 492).

Rule 402 creates a general rule of admissibility for relevant evidence. Evidence is relevant under Rule 401 if "(a) it has any tendency to make a fact more or less probable than it would be

2

without the evidence; and (b) the fact is of consequence in determining the evidence." Sometimes, even alleged wrongs outside the scope of the charged wrongdoing may be relevant and admissible under Rule 404(b) to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Relevant evidence of any type must still be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." In the case of evidence relevant only under Rule 404(b), "whether any risk of unfair prejudice substantially outweighs the evidence's probative value" is one of three key considerations the Court must weigh. *United States v. Barnes*, 822 F.3d 914, 920 (6th Cir. 2016). However, Rule 404(b) "is a rule of inclusion rather than exclusion[.]" *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985).

The statements clear the threshold of relevancy. They evince an intention at least to consider lethal action against contact tracers involved as government officials, or at the behest of government officials, in responding to the COVID-19 pandemic. The government's response to the pandemic—and in particular Governor Whitmer's response to the pandemic—is at least part of the motivation the prosecution says this and other defendants had for entering the kidnapping conspiracy. Moreover, the statements were made by Defendant Caserta during the same timeframe involved in the charged offense conduct. And the statements involve tactics (lethal action) Defendant Caserta endorsed as part of other aspects of the charged offense conduct. Accordingly, the statements may actually qualify as *res gestae* evidence intrinsic to the charges at issue. At a minimum they fall within Rule 404(b) as evidence of motive, intent, planning and preparation.

Defendant Caserta argues that, even if relevant, the statements must still be excluded under Rule 403 either generally because probative value would be substantially outweighed by the risk

3

of unfair prejudice—or in the 404(b) balancing because the risk of unfair prejudice substantially outweighs probative value. The Court disagrees. Any potential confusion can readily be managed with jury instructions. The statements themselves are negative to be sure. But that does not make them unfairly prejudicial. "Unfair prejudice 'does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis." *United States v. Gibbs*, 172 F.3d 408, 430 (6th Cir. 1999) (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993). Courts routinely allow recorded statements with vulgar language and threats. *See United States v. Sims*, 11 F.4th 315, 323 (5th Cir. 2021) (noting that courts generally find that "explicit rap videos are probative and outweigh substantial prejudice when the defendant performs the song, describes events closely related to the crime charged, and the evidence is not cumulative."). The recorded statements in this case, while offensive, do not "so shock[] the conscience" that they will lead to the jury convicting the Defendant based on an improper purpose. *United States v. Asher*, 910 F.3d 854, 861-62 (6th Cir. 2018).

**ACCORDINGLY, IT IS ORDERED** that Defendant Caserta's Motion to Exclude (ECF No. 491) is **DENIED.**[2]

Dated:   February 28, 2022            /s/ Robert J. Jonker
                                       ROBERT J. JONKER
                                       CHIEF UNITED STATES DISTRICT JUDGE

---

[2] The case for exclusion is even weaker if entrapment becomes an issue for the jury. Entrapment requires proof of both "(1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in criminal activity." *United States v. Al-Cholan*, 610 F.3d 945, 950 (6th Cir. 2010). The video is certainly probative on the predisposition issue. The Court does not rely on this in denying the present motion however because it is not yet clear that Defendant Caserta will assert entrapment as a defense in the case. By separate order, the Court sets a schedule for the order of proofs on a potential entrapment defense, including a deadline for any defendant to declare an intention to raise an entrapment defense.